# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 12, 2011

Lyle W. Cayce
Clerk

No. 10-20625

MANUEL F. ZAMORA;
CHRISTOPHER ZAMORA,

Plaintiffs-Appellants

v.

CITY OF HOUSTON,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-4510

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Houston Police Department (HPD) Lieutenant Manuel Zamora and his son, HPD Officer Christopher Zamora brought a Title VII race discrimination suit against the Defendant-Appellee City of Houston, raising claims of disparate treatment, disparate impact, and retaliation. The City filed a motion for summary judgment, which the district court granted. We VACATE and REMAND Christopher Zamora's retaliation claim to the district

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20625

court for reconsideration in light of a recent Supreme Court decision. With respect to the remaining claims, we AFFIRM the summary judgment.

I.    RETALIATION[1]

Christopher argues that the district court erred in finding that he had not shown a genuine issue of fact with respect to his prima facie case of retaliation.[2] Title VII makes it unlawful for an employer to retaliate against an employee who opposes an employment practice made unlawful by Title VII. 42 U.S.C. § 2000e–3(a). To establish a prima facie case of retaliation, a plaintiff must provide evidence that: (1) he engaged in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse employment action. *See*, *e.g.*, *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). We have defined protected activity as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceedings, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).

Here, with respect to the first prong, the district court ruled that Christopher did not demonstrate that he participated in an activity protected by Title VII; instead, it concluded that Christopher's retaliation claim was based on the protected activity engaged in by his father, Manuel. Citing Fifth Circuit precedent, the district court ruled that Christopher's "allegation is legally insufficient to establish a prima facie case of retaliation under Title VII, which

---

[1]   In the district court, Manuel also raised a claim of retaliation, which the district court ruled did not raise a genuine issue of material fact. In his brief on appeal, Manuel mentions his retaliation claim in the statement of issues, but does not brief it. Thus, Manuel has abandoned any retaliation claim. Fed. R. App. P. 28(a)(9)(A); *Dardar v. Lafourche Realty Co., Inc.*, 985 F.2d 824, 831 (5th Cir. 1993).

[2]   Because the two Plaintiffs-Appellants are father and son and share the same last name, this opinion refers to them individually by their first names.

2

requires that a plaintiff demonstrate retaliation because of *his own* protected activity." (emphasis added).

Very recently, however, the Supreme Court held that an employee could bring a Title VII claim on the basis of retaliation that he suffered in response to protected activity engaged in by a co-worker who was a close family member. *Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863 (2011). In *Thompson*, Eric Thompson and his fiancée, Miriam Regalado, were both employed by North American Stainless (NAS). *Id.* at 867. Regalado filed an EEOC complaint alleging sex discrimination, and three weeks later, NAS terminated Thompson's employment. *Id.* Applying the *Burlington*[3] test, the Supreme Court thought "it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired." *Id.* at 868. Nonetheless, NAS argued that if the *Burlington* standard is applied to "third-party reprisals," then the "employer [will be] at risk any time it fires any employee who happens to have a connection to a different employee who filed a charge with the EEOC." *Id.* The Supreme Court rejected NAS's argument, concluding that "there is no textual basis for making an exception to it for third-party reprisals, and a preference for clear rules cannot justify departing from statutory text." *Id.* Further, the Court declined to provide a "fixed class of relationships for which third-party reprisals are unlawful." *Id.* Instead, the Court opined that "firing a close family member will almost always meet the *Burlington* standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize." *Id.*

---

[3] *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53 (2006) (explaining that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination") (internal quotation marks and citations omitted).

No. 10-20625

When ruling on the instant motion for summary judgment, the district court did not have the benefit of the Supreme Court's recent pronouncement that a plaintiff may bring a retaliation claim based on a close family member's engaging in protected activity.[4]   Because the district court found that Christopher made an insufficient showing on the first prong of the test, it did not address the remaining two prongs of the test (1) whether the employer took an adverse employment action against the plaintiff; and (2) whether a causal connection exists between the protected activity and the adverse employment action.  Under these circumstances, we vacate and remand Christopher's claim of retaliation to allow the district court to reconsider the motion for summary judgment in light of *Thompson*.

II.    DISPARATE TREATMENT

A.    Manuel

Manuel contends that the district court erred in granting summary judgment as to his claims of disparate treatment with respect to the denial of his three requests to be transferred to other lieutenant positions.  The district court recognized our holding that "the denial of a transfer *may* be the objective equivalent of the denial of a promotion and thus qualify as an adverse employment action."  *Alvarado v. Tex. Rangers*, 492 F.3d 605, 614 (5th Cir. 2007).   Nonetheless, the district court ruled that Manuel did not provide evidence showing that the three positions constituted anything more than purely lateral transfers, which do not qualify as adverse employment actions.  *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999).  After having

---

[4]   Indeed, at the time of its ruling, the district court was bound by our precedent that required a plaintiff's claim of retaliation be based on the plaintiff's engaging in his own protected activity.  *See, e.g., Holt v. JTM Indus.,* 89 F.3d 1224, 1227 (5th Cir. 1996) (Age Discrimination in Employment Act claim); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 441 (5th Cir. 2007) (Title VII claim).

reviewed the evidence cited by Manuel, we agree with the district court that Manuel has failed to raise a fact

issue with respect to whether the three other lieutenant positions were objectively better than Manuel's current lieutenant position.  We thus affirm the grant of summary judgment as to Manuel's disparate treatment claim.

> B.  Christopher

Christopher contends that the district court erred in granting summary judgment against his claim of disparate treatment based on HPD transferring him to a less desirable patrol assignment.  The district court ruled that Christopher had failed to demonstrate a genuine issue of material fact with respect to whether race discrimination was a motivating factor for his transfer.  Indeed, the court found that he "fail[s] even to argue that race discrimination was the reason for [his] transfer.  [Christopher's] theory of the case . . . is that HPD personnel forced [him] to transfer out of the Crime Reduction Unit, and to take a less prestigious patrol position, in order to retaliate against him for the EEOC charge and lawsuit filed by his father."  We have reviewed Christopher's claim and agree with the district court that Christopher's theory of this claim was not actually discrimination, but is instead one of retaliation.  Thus, the City's motivation for transferring him to a purportedly lesser position did not involve discrimination.  We affirm the district court's grant of summary judgment with respect to Christopher's claim of disparate treatment.

> III.  DISPARATE IMPACT

Manuel contends that the district court erred in granting summary judgment on his claim of disparate impact based on HPD's procedures for promotion to the rank of captain.  The district court ruled that the "Plaintiffs have provided inadequate explanation of the statistics, and have made no proffer of expert testimony to interpret them."  The court further noted that their briefing did not "control or account for other variables that may affect the

promotion decisions cited." Finally, the court found that Manuel did not satisfy the requirement of showing causation by conducting a systemic analysis of the disparate effects of all the promotional criteria for each rank. *See Johnson v. Uncle Ben's, Inc.*, 965 F.2d 1363, 1367 (5th Cir. 1992). On appeal, Manuel has failed to show that the district court erred in its ruling, and thus we AFFIRM, essentially for the reasons stated by the district court.

For the above reasons, the district court's judgment is AFFIRMED in part and VACATED and REMANDED in part.